IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID BOHANAN and KATHY BOHANAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:06cv122 |
| ) | |
| BRIDGESTONE/FIRESTONE NORTH ) | Judge Thomas A. Wiseman, Jr. |
| AMERICAN TIRE, LLC, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Before the Court is Defendant Bridgestone/Firestone North American Tire, LLC's Rule 12(c) Motion to Dismiss (Doc. No. 12) in which the Defendant seeks dismissal of this matter in its entirety on the basis of judicial estoppel. As set forth below, the Court finds that Plaintiff's claims in this case should be barred by the doctrine of judicial estoppel; Defendant's motion will therefore be granted.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs David Bohanan and Kathy Bohanan filed their Complaint in this action on February 16, 2006, alleging that they had both been subject to age discrimination or reverse-race discrimination, retaliation and/or harassment in violation of Title VII of the Civil Rights Act of 1965 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* Each Plaintiff sought $300,000 in damages plus punitive damages and attorneys' fees. At the time they filed their Complaint, both Plaintiffs were still employed by the Defendant. (*See* Doc. No. 1.) Plaintiffs complained of discriminatory or retaliatory acts on the part of the Defendant beginning after August 6, 2004, when Ms. Bohanan filed a union grievance against her supervisor, after which time Plaintiffs allege they were both subject to "workplace harassment." In addition, Mr. Bohanan allegedly suffered an adverse employment action on July 27, 2005.

On February 13, 2004, almost exactly two years before filing this lawsuit, Plaintiffs filed a Voluntary Petition for Chapter 13 Bankruptcy. (Def.'s Mot. Dism., Ex. 2.) Schedule B of the Voluntary Petition required Plaintiffs, as "debtor," to list all "[o]ther contingent and unliquidated claims of every nature." (*Id.* at 9.) On March 25, 2004, the Bankruptcy Court entered an Order Confirming Chapter 13 Plan, approving payment to the Trustee of $632 weekly for 36 months, and providing for payment to unsecured creditors of the 100% of

the amount owed them. (Ex. 3 at ¶¶ 3, 4(iv). Plaintiffs petitioned to add an additional creditor in July 2004, and additional proofs of claim were submitted in August 2004.

On September 20, 2006, seven months *after* Plaintiffs instituted the action in this Court, Plaintiffs filed a Motion to Modify Chapter 13 Plan in the bankruptcy court, alleging that Ms. Bohanan had become disabled, that Mr. Bohanan had retired to take care of her, and their income was significantly reduced as a result of these events. (Def.'s Ex. 1.) The Bankruptcy Court granted the Motion to Modify on October 17, 2006, approving Plaintiffs' request to decrease the dividend paid to unsecured creditors from 100% to 30%, to reduce their weekly payments from $632 to $164, and to extend the payment period from 36 months to 48 months.

Plaintiffs have not at any time sought to modify or amend Schedule B or their Statement of Financial Affairs to list their claims against the Defendant as a potential asset.

## II.     STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, a defendant may move for judgment on the pleadings "at any time after the pleadings are closed," that is, after filing its answer, "but within such time as not to delay the trial." While a Rule 12(b)(6) motion is "concerned with the technical sufficiency of the allegations in the complaint" rather than the merits of the claim, a Rule 12(c) motion "*is* concerned with the merits: accepting the truth of the allegations and assuming *arguendo* that the plaintiff has stated a technically valid claim, is the defendant nonetheless entitled to judgment on the merits." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 947 (S.D. Ohio 2003) (citations omitted). Regardless, a Rule 12(c) motion, like a Rule 12(b)(6) motion, will be granted only when it is clear that "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004) (hereafter, "Wright & Miller") ("A Rule 12(c) motion is designed to provide a means for disposing of cases when the material facts are not in dispute . . . and a judgment on the merits can be achieved by focusing on the contents of the pleadings."). A court reviewing such a motion must therefore view the facts in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Id.*; *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

For both 12(b)(6) and 12(c) motions, the court primarily considers the allegations in the complaint;

2

however, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted); Wright & Miller § 1367. If matters outside the pleadings or beyond the scope of those materials of which the court may take judicial notice are presented, the court may refuse to accept such materials or convert the motion into one for summary judgment. *Id.* § 1371; *Bower v. Fed. Express Corp.*, 156 F. Supp. 2d 678, 684 (W.D. Tenn. 2001).

In this case, Defendant has attached copies of various documents filed in Plaintiffs' bankruptcy proceedings, *In re Bohanan*, 3:04-01971 (Bankr. M.D. Tenn.), including Plaintiffs' Motion to Modify Chapter 13 Plan (dated 9/20/2006), Plaintiffs' Chapter 13 Voluntary Bankruptcy Petition (dated 2/14/2005), Bankruptcy Court's Order Confirming Plan (dated 3/25/2004), Bankruptcy Court Docket Sheet (through 10/27/2006), Plaintiffs' Amended Monthly Family Budget (undated), and the Bankruptcy Court's Order Granting Motion to Modify Chapter 13 Plan (dated 10/16/2006). Because the filings and the orders entered in the bankruptcy action are public records, the Court may consider them without converting Defendants' motion into one for summary judgment under Rule 56. *Cf. Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1041 n.5 (W.D. Tenn. 2003) (noting that a bankruptcy order was a "public record" of which the court could take judicial notice without converting a motion to dismiss into one for summary judgment). To be clear, the Court takes notice of the existence of the filings in Plaintiffs' bankruptcy proceedings, the dates of filing, and the statements of fact recited therein without taking notice of the truth of those statements. *Cf.* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *cf. Lee v. County of Los Angeles*, 240 F.3d 754, 775 (9th Cir. 2001) (taking notice of the existence of another court's opinion and statements of facts recited in the opinion, but not of the truth of those statements); *United States v. Am. Tel. & Tel. Co.*, 83 F.R.D. 323, 333–334 n.25 (distinguishing between taking notice of the existence of judicial records in unrelated proceedings as opposed to taking notice of the truth of matters contained therein). Further, the Court observes that Plaintiffs have not objected to the authenticity of any of the documents attached as exhibits to Defendant's motion, nor have they contested the veracity of the representations made by Defendant concerning the bankruptcy filings.

**III. DISCUSSION**

Defendant asserts that it is entitled to judgment as a matter of law on the basis of judicial estoppel, on the grounds that Plaintiffs were required—and failed—to list this lawsuit among their assets in their bankruptcy court filings, or to amend such filings after they filed this lawsuit to reflect its existence.

*A. The Applicable Law*

    *1. Bankruptcy Code Disclosure Requirements*

Section 521(1) of the Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). It is well settled that a cause of action is an asset that must be scheduled under § 521(1). *See Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). Moreover, "[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (quoting *Youngblood Group v. Lufkin Fed. Savings & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.") (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)).

    *2. The Doctrine of Judicial Estoppel*

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Judicial estoppel also "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (quotation omitted). The Sixth Circuit has previously described judicial estoppel as a rule against "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "hav[ing] [one's] cake and eat[ing] it too." *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988) (citations omitted) (alteration in original). The Sixth

4

Circuit has observed that the doctrine "should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Eubanks*, 385 F.3d at 897 (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The Supreme Court has noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *New Hampshire*, 532 U.S. at 750. Nonetheless, despite the "amorphous nature of judicial estoppel," *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30–31 (1st Cir. 2004), the Supreme Court has identified three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51 (internal quotation marks and citations omitted). These factors, however, are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751. In *Browning v. Levy*, the Sixth Circuit, focusing on the first two of the three factors identified in *New Hampshire*, described judicial estoppel as barring a party from "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Browning*, 283 F.3d at 775 (internal quotation omitted).

### B. Whether Plaintiffs Are Estopped From Asserting Their Claims in this Suit

There are numerous cases within the Sixth Circuit in which judicial estoppel has been applied to bar a plaintiff's civil claims where the plaintiff failed to disclose the existence of those claims as an asset in her bankruptcy proceedings. Recently, in *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420 (6th Cir. 2005), the plaintiff allegedly suffered an adverse employment action when she was terminated from her employment in October 2001. Two months later, plaintiff and her husband filed a joint voluntary Chapter 13 bankruptcy petition. Although she clearly knew about it, the plaintiff did not list her potential discrimination claim against her former employer on Schedule B of the Chapter 13 petition. The bankruptcy court confirmed the plaintiff's

5

Case 3:06-cv-00122    Document 20    Filed 04/10/07    Page 5 of 10 PageID #: 163

bankruptcy plan, which called for repayment of 32% of her husband's and her indebtedness, in February 2002. Approximately one month later, plaintiff sent a letter to the EEOC alleging discrimination; she filed a formal discrimination charge with the EEOC in July 2002; and she filed suit in federal court in October 2002, after the EEOC issued its right-to-sue letter, asserting claims of race, sex and maternity-status discrimination in violation of Title VII. Plaintiff never amended her bankruptcy petition to include the discrimination claim as an asset.

In response to the defendant's motion for summary judgment on judicial estoppel grounds, plaintiff claimed that she had relied on her bankruptcy counsel's paralegal, who advised her not to mention her potential discrimination lawsuit in her petition; plaintiff also stated in an affidavit that she had notified the Chapter 13 Trustee's office of her potential discrimination claim. In the same affidavit, the plaintiff alleged that she had acted in good faith and had "never intended to mislead anyone in any way." 141 Fed. Appx. at 422–23. The district court nonetheless granted defendant's motion and the Sixth Circuit affirmed, finding, first, that the plaintiff's pursuit of her discrimination action was "without question 'contrary to' her sworn bankruptcy petition," which she had signed under penalty of perjury indicating that she had no contingent and unliquidated claims, despite the fact that she had suffered her adverse employment action one month before filing the bankruptcy petition, and complained to the EEOC about her former employers conduct one month after her Chapter 13 plan was confirmed. *Id.* at 425 (noting that the Sixth Circuit had "previously found that pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel," citing *Eubanks*, 385 F.3d at 898; *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)). Second, the court found that the bankruptcy court's confirmation of the plaintiff's Chapter 13 plan "adopted [plaintiff's] statement that she had no potential causes of action." *Id.*

In rejecting the plaintiff's claim that judicial estoppel should not apply to her because her omission resulted from a "good-faith mistake," the court noted that failure to disclose a cause of action could be deemed inadvertent where "(1) the debtor lacks the knowledge of the factual basis of the undisclosed claims, or (2) the debtor has no motive for concealment." *Id.* at 425–26 (internal quotation marks omitted, quoting *Browning*, 283 F.3d at 776). The court found that there was no question the plaintiff knew about her claim, and further, that she had a motive to conceal her claim because "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Id.* at 426. Next, the court considered the plaintiff's argument that "an absence

6

of bad faith" can still make summary judgment on estoppel grounds inappropriate. *Id.* at 426 (citing *Eubanks*, 385 F.3d at 895). Distinguishing the facts before it from those in the earlier case of *Eubanks v. CBSK Financial Group, Inc.* in which the Sixth Circuit found that the plaintiffs demonstrated they had acted in good faith such that judicial estoppel should not apply, the *Lewis* court noted that, in *Eubanks*, the plaintiffs showed they had made numerous affirmative attempts to notify the bankruptcy court about their pending civil claims, even though they never actually amended their petition to reflect them, including notifying the bankruptcy trustee of the claim during a meeting; providing the trustee with all documents regarding the claim; moving the bankruptcy court for a status conference on the issue of the claim; unsuccessfully moving the bankruptcy court to allow the trustee to be substituted for the plaintiffs in the other action; and, finally, filing an amendment to their original bankruptcy petition to add the action to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel. *See Eubanks*, 385 F.3d at 895–97. As stated in *Lewis*, "[t]he court held that although the plaintiffs had knowledge of the lender liability claim during the pendency of the bankruptcy proceeding, the above actions by the plaintiffs demonstrated that their omission was in good faith and in all likelihood inadvertent given the plaintiffs' 'constant affirmative' efforts to inform the trustee and the bankruptcy court of the claim 'through correspondence, motions, and status conference requests.'" *Lewis*, 141 Fed. Appx. at 426 (quoting *Eubanks*, 385 F.3d at 899 & n.3).

By contrast, the court in *Lewis* found that the plaintiff alleged only "minimal efforts" to inform the bankruptcy court of her civil action, which were not sufficient under *Eubanks* to establish that her omissions were inadvertent. The court also rejected the plaintiff's argument that she had relied in good faith on the advice of her attorney's paralegal, based on the principle that a litigant is bound by the errors of his or her "freely selected agent." *Id.* (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). The court therefore affirmed summary judgment for the defendant on judicial estoppel grounds. *Cf. Johnston v. Matrixx Initiatives, Inc.*, 2007 WL 128929 (E.D. Mich. Jan. 12, 2007) (granting summary judgment on judicial estoppel grounds under facts similar to those in *Lewis*); *Sayler v. Honda of Am. Mfg., Inc.*, 2006 WL 3230807 (S.D. Ohio Nov. 6, 2006) (same); *Scott v. The Dress Barn, Inc.*, 2006 WL 962534 (W.D. Tenn. April 12, 2006) (same); *Clark v. Procter & Gamble Mfg. Co.*, 2006 WL 208873 (W.D. Tenn. Jan. 26, 2006) (same).[1]

---

[1] *But see Eubanks*, *supra* (reversing summary judgment for the defendant, holding that application of judicial estoppel was not warranted where the specific facts in that case indicated plaintiff had not acted in bad faith ); *Browning*, *supra* (reversing summary judgment against one plaintiff on judicial estoppel grounds where

7

What distinguishes the case at bar from *Lewis* and the district court cases cited above, is that the plaintiffs in those cases filed their bankruptcy petitions either shortly after or within a very short period of time before filing their civil actions, such that there was no doubt that the plaintiffs were aware of their civil claims or potential claims at the time they filed their bankruptcy petitions and that they affirmatively failed to disclose such claims on their Schedules B. In the case at bar, Plaintiffs filed their bankruptcy action two years before filing this Title VII action, and at least six months prior to becoming aware of a potential cause of action against their employer. The bankruptcy court confirmed their Chapter 13 Plan in March 2004, still five months before any employment claim arose. In other words, at the time they filed for Chapter 13 protection and at the time their initial Plan was confirmed, Plaintiffs had no obligation to disclose their claims here because they had not yet arisen. Further, although the Plaintiffs clearly had an obligation to amend their petition to include reference to the claims once they arose, their failure to amend was in the form of an omission rather than an affirmative assertion that no such claim existed.

In addition, while the duty to disclose all potential causes of action in a Chapter 13 bankruptcy is an ongoing one, *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999); *Best v. Kroger Co.*, 339 B.R. 180, 183 (W.D. Tenn. 2006) ("A bankruptcy petition is signed under penalty of perjury, with a continuing, affirmative duty to disclose all assets. . . ."), Plaintiff's original Chapter 13 Plan as initially confirmed by the bankruptcy court provided for payment of 100% of their unsecured claims. Thus, at least up until the time Plaintiffs filed their petition to modify their Chapter 13 plan in August 2006, even though they failed in their obligation to amend their bankruptcy petition to disclose their civil claim, they had relatively little motive to conceal the potential cause of action, since it was unlikely that any judgment received in the civil case would have resulted in a windfall to them. *Cf. Best*, 339 B.R. at 185 (denying the defendant's motion to dismiss, finding that the fact that the plaintiff and her husband consented to increasing the amount to be paid to their unsecured creditors to 100% supported their argument that they had no motive to conceal); *but see Lewis*, 141 Fed. Appx. at 426 (noting that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets").

Notwithstanding, in August 2006, Plaintiffs here filed a motion to amend their Chapter 13 Plan,

---

that plaintiff would not have received a "windfall" as a result of its failure to disclose its claims and therefore had no motive to conceal them); *Aziz v. Dollar Tree Stores, Inc.*, 2005 WL 2290593 (E.D. Tenn. Sept. 20, 2005) (declining to grant summary judgment on the grounds of judicial estoppel where specific facts in that case indicated plaintiff had not acted in bad faith).

8

specifically for the purpose of reducing the percentage to be paid to unsecured creditors from 100% to 30%. The bankruptcy court entered an order granting that motion on October 17, 2006. In the interim, Plaintiffs did not seek to amend their schedules to reflect the claims asserted in the case at bar. In other words, now that their Chapter 13 Plan, as amended by the bankruptcy court, provides for payment of only 30% of their unsecured debt, Plaintiffs clearly stand to gain a windfall if they are successful in the suit before this Court. Thus, regardless of whether they initially had a motive to conceal their civil claims from the bankruptcy court, they gained such a motive as soon as they filed their motion to amend.

Further, in their opposition to Defendant's motion, Plaintiffs do not indicate that they ever made any affirmative attempt to notify the bankruptcy court of this action until several months *after* Defendant filed its motion to dismiss. Defendant's 12(c) motion was filed on November 28, 2006. On February 12, 2007, the same day Plaintiffs filed their response in opposition to the motion to dismiss before this Court, they also filed in the bankruptcy court a Motion to Employ Special Counsel (Case No. 3:04-bk-01971, Doc. No. 47), accompanied by an Affidavit by James L. Harris (Doc. No. 46). The motion and affidavit indicate that Plaintiffs sought to hire Mr. Harris to represent them "to handle debtors['] employment discrimination and retaliatory discharge claim" on a 1/3 contingency fee basis. Both filings also state that Mr. Harris had not performed any pre-petition services on behalf of the debtors. They do not indicate, however, when the Plaintiffs' employment claims arose, when they actually hired Mr. Harris (which occurred at least a year before they sought permission to do so), nor how much money they are seeking in their employment claims. Moreover, Plaintiffs have not presented any evidence that they ever informed the bankruptcy court or the bankruptcy trustee about their pending discrimination claim prior to filing their Motion to Employee Special Counsel, and to date still have not sought to amend their Chapter 13 petition to include as an asset the action pending in this Court.

Based upon these undisputed facts, the Court finds that, as a result of the filing of their motion to amend their Chapter 13 Plan, Plaintiffs (1) asserted under oath a position that was contrary to that asserted in this case; and (2) the bankruptcy court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Browning*, 283 F.3d at 775 (internal quotation omitted). Although Plaintiffs attempt now to assert that their omission was not in bad faith, Plaintiffs have not pointed to any evidence demonstrating good faith on their part. *See Pate v. United Parcel Service, Inc.*, No. 3:05-cv-531, 2006 WL 2076795, *2 (E.D. Tenn. July 24, 2006) ("Once a defendant demonstrates that a finding of judicial estoppel

9

is supported by the record, a plaintiff must come forward and show why the doctrine should not apply under the facts of the case."). Plaintiffs' failure to amend their Schedule B to include reference to this claim could well have been construed as oversight and inadvertence, given the timing of the filing of the two lawsuits, *but for* the fact that Plaintiffs sought permission to amend their Chapter 13 Plan in August 2006, which the bankruptcy court subsequently granted. In affirming their amended Plan, the court relied upon Plaintiffs' earlier representation that they were not aware of any other assets that might affect their ability to make payments to their creditors. The mere fact that Plaintiffs belatedly, after Defendant filed its motion, sought permission to hire their attorney in this case on a contingency fee basis–at least a year after they had already hired him—does not support a finding of good faith. To the contrary: the fact that Plaintiffs failed to disclose to the bankruptcy court any other facts concerning their lawsuit, including when their claims arose, how long this case had been pending, or the amount of damages sought, suggests that Plaintiffs were attempting to conceal those very details. *Cf. Pate*, 2006 WL 2076795, at *3 (granting defendant's motion for judgment on the pleadings where the plaintiff failed to amend his bankruptcy petition to reflect a civil employment action filed during the pendency of the bankruptcy).

In sum, although the Sixth Circuit has recognized a good faith exception to judicial estoppel, *see Eubanks*, 385 F.3d at 895 , Plaintiffs in this case have offered no evidence of good faith, nor have they produced facts suggesting that their failure to amend their Schedule B at least as of the date they filed their motion to amend their Chapter 13 Plan was the result of inadvertence or a mistake. For all these reasons, the Court finds that judgment as a matter of law on the grounds of judicial estoppel is appropriate.

## IV. CONCLUSION

Defendant is entitled to judgment in its favor as a matter of law under Rule 12(c) on the grounds of judicial estoppel. An appropriate Order granting Defendant's motion will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge

10